1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                          **DISTRICT OF NEVADA**

8

9   KENNETH FRIEDMAN,                    )
                                         )
10            Petitioner,                )        3:07-cv-0338-LRH-VPC
                                         )
11  vs.                                  )        **ORDER**
                                         )
12  JACK PALMER, *et al.*,               )
                                         )
13            Respondents.               )
    _____/

14

15          This action is a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed

16  by petitioner, a Nevada state prisoner.  Before the Court are several motions filed by petitioner.  Also

17  before the Court are the merits of the third amended petition and supplemental petition.

18  **I.  Background**

19          In affirming the denial of petitioner's post-conviction state habeas petition, the Nevada

20  Supreme Court summarized the factual background of petitioner's crimes, as follows:

21              Friedman contacted by telephone various businesses in Las Vegas
                pretending to be a woman named Paula who represented a local
22              neighborhood watch group.  Friedman informed the recipients of the
                calls that a sexual predator wearing a certain type of clothing was in
23              the area.  Shortly thereafter Friedman appeared at these businesses
                wearing the described clothing and engaged in lewd conduct in the
24              presence of employees.  Several employees from a Subway sandwich
                shop, Grumpy's and a 7-11 convenience store unequivocally identified
25              Friedman as the individual who committed various acts of indecent
                exposure and lewdness at their respective businesses in their presence.
26              One night, Friedman followed April Gagen, a Subway employee, after
                she left work.  Friedman yelled obscenities at Gagen and threatened to
27              harm her.

28

1   (ECF No. 64, at pp. 1-2).[1]

2   **II. Procedural History**

3         On February 27, 2004, the State filed an amended information in the Eighth Judicial District

4   Court for the State of the Nevada charging petitioner with one count of aggravated stalking, four

5   counts of indecent exposure, and seven counts of open or gross lewdness. (Exhibit 19).[2] After a jury

6   trial, the jury returned a verdict finding petitioner guilty of all counts. (Exhibit 21). The state district

7   court adjudicated petitioner a habitual criminal and sentenced petitioner to life without the possibility

8   of parole for the aggravated stalking count. (Exhibit 23). The state district court sentenced

9   petitioner to terms of twelve months for each of the other counts, with each count concurrent to the

10  life sentence and each other. (*Id.*). The court issued its amended judgment of conviction on May 7,

11  2004. (Exhibit 27). Petitioner appealed. (Exhibit 26). On November 16, 2005, the Nevada

12  Supreme Court affirmed petitioner's convictions. (Exhibit 42).

13        During the pendency of his direct appeal, petitioner filed two *pro se* petitions for a writ of

14  mandamus with the Nevada Supreme Court (Exhibits 29 & 33), both of which were denied (Exhibits

15  30 & 36).

16        On February 8, 2006, petitioner filed a *pro se* post-conviction habeas petition and "addenda"

17  in the state district court. (Exhibits 44 & 45). Without holding an evidentiary hearing, the state

18  district court denied post-conviction relief on December 23, 2006. (Exhibits 49 & 55). Petitioner

19  appealed the denial of his state habeas petition to the Nevada Supreme Court. (Exhibit 54). On

20  March 24, 2008, the Nevada Supreme Court affirmed the state district court's denial of the post-

21  conviction habeas petition. (Exhibit 64).

22

23       [1] The summary of background facts is intended only as an overview of the underlying criminal

24  case, in order to provide context for the discussion of the issues. Any absence of mention of specific
    evidence in this overview does not signify that this Court has overlooked or ignored the evidence. The

25  Court makes no credibility findings or other factual findings regarding the truth of the evidence or
    statements of fact in the state court. No statement of fact made in describing statements, testimony, or

26  other evidence in the state court, whether in this overview or in the discussion of a particular issue,
    constitutes a factual finding of this Court.

27
         [2] Unless otherwise noted, the exhibits referenced in this order are found in the court's record

28  at ECF Nos. 140-154.

During the pendency of his appeal from the state district court's denial of his post-conviction petition, petitioner filed a *pro se* petition for writ of habeas corpus in the Nevada Supreme Court. (Exhibit 57). On July 5, 2007, the Nevada Supreme Court denied the petition. (Exhibit 58).

Petitioner filed his federal petition for writ of habeas corpus in this Court on July 31, 2007. (ECF No. 1). On January 11, 2010, the Court appointed counsel to represent petitioner. (ECF No. 130). Through counsel, petitioner filed his third amended petition on October 1, 2010. (ECF No. 139). By order filed February 7, 2011, the Court granted petitioner's counsel's motion to withdraw due to an irreconcilable conflict. (ECF No. 165). Subsequently, the Court allowed petitioner to file a *pro se* supplement to his petition (ECF No. 172), which is located in the court's record at ECF No. 166.

Respondents filed a motion to dismiss the third amended petition and the supplemental petition. (ECF No. 220). By order filed July 30, 2012, this Court found the third amended petition and the supplemental petition to be "mixed," in that some claims were exhausted and some claims were not exhausted. (ECF No. 266, at pp. 26-27). The grounds found to be unexhausted were as follows: Ground 5; Ground 6, in part; Ground 7(C), in part; Ground 7(D); Ground 7(E), in part; Ground 7(F), in part, and Ground 12(B)(2), in part. (ECF No. 266, at pp. 26-27). On August 6, 2012, petitioner filed a sworn declaration abandoning his unexhausted claims and expressing his desire to proceed on only the exhausted claims of the third amended petition and the supplemental petition. (ECF No. 267). As such, this action proceeds on the exhausted grounds of the third amended petition and the supplemental petition.

**III. Motions to Expand the Record and for Discovery**

Petitioner has filed two motions to expand the record (ECF Nos. 269 & 270). Petitioner has filed a motion for discovery. (ECF No. 271). Petitioner later filed additional motions to expand the record (ECF Nos. 290, 291, 300, 305, 310, 311 & 318). Petitioner filed motions for the issuance of subpoenas. (ECF Nos. 293, 298, 299). Respondents have opposed all of petitioner's motions.

The United States Supreme Court, in *Cullen v. Pinholster*, — U.S. — ,131 S.Ct. 1388, 1398-1400 (2011), held that when a claim is reviewed under the deferential standard of § 2254(d) by a federal court, for claims that were considered by the state courts, new evidence not presented to those

3

courts cannot be received. "If a claim has been adjudicated on the merits by a state court, a federal

habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before the

state court." *Id.* at 1400. This conclusion flows from the express language of the AEDPA:

> We first consider the scope of the record for a § 2254(d)(1) inquiry.
> The State argues that review is limited to the record that was before the
> state court that adjudicated the claim on the merits. Pinholster
> contends that evidence presented to the federal habeas court may also
> be considered. We agree with the State.
>
> * * *
>
> If an application includes a claim that has been "adjudicated on the
> merits in State court proceedings," § 2254(d) , an additional restriction
> applies. Under § 2254(d), that application "shall not be granted with
> respect to [such a] claim . . . unless the adjudication of the claim:
>
> > "(1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the Supreme
> > Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State court proceeding."
>
> This is a "difficult to meet," *Harrington v. Richter*, 562 U.S. —, — ,
> 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011), and "highly deferential
> standard for evaluating state-court rulings, which demands that state-
> court decisions be given the benefit of the doubt, *Woodford v. Visciotti*,
> 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curium)
> (citation and internal quotation marks omitted). The petitioner carries
> the burden of proof. *Id.*, at 25, 123 S.Ct. 357.
>
> We now hold that review under § 2254(d)(1) is limited to the record
> that was before the state court that adjudicated the claim on the merits.
> Section 2254(d)(1) refers, in the past tense, to a state-court
> adjudication that "resulted in" a decision that was contrary to, or
> "involved" an unreasonable application of, established law. This
> backward-looking language requires an examination of the state-court
> decision at the time it was made. It follows that the record under
> review is limited to the record in existence at the same time, *i.e.* the
> record before the state court.

*Cullen v. Pinholster*, 131 S.Ct. at 1398. The claims that petitioner asserts in the third amended

petition and the supplemental petition have been found to be exhausted by this Court. (ECF No.

4

266; 267).[3]  Because this action proceeds on claims that were considered on the merits by the state courts, this Court may consider only those facts that were considered on the record by the state courts.  Petitioner's motions to expand the record and motions for discovery violate the directive of *Cullen v. Pinholster*, 131 S.Ct. at 1398-1400, because petitioner seeks to introduce evidence that was not considered by the state courts when considering his exhausted habeas corpus claims.  This Court will not consider new evidence that was not considered by the state courts, on the state court record, in this federal habeas proceeding.  As such, petitioner's motions to expand the record, motion for discovery, and motions for the issuance of subpoenas are denied.

## IV.  Petitioner's Other Motions

In the course of this action, petitioner has filed several motions which the Court now addresses.  First, petitioner's motion to proceed with unilateral reply briefing (ECF No. 275) and motion for an extension of time to file supplemental reply to the answer (ECF No. 284) are denied as moot.

Petitioner filed a motion for receipt of file materials.  (ECF Nos. 289).  Petitioner seeks exhibits previously filed at ECF No. 154, Exhibit 75, by his own counsel at the time.  The motion is denied, as petitioner is in possession of the requested exhibit in full.  Petitioner filed another motion for receipt of file materials, seeking a copy of the sentencing memorandum and its exhibits filed previously in this action, by petitioner's own counsel at the time, at ECF No. 45, Exhibit 23A.  (ECF No. 321).  Petitioner's motion is denied, as petitioner gives no reason why he is not already in possession of the materials he alleges were previously filed by his own counsel at the time.

Petitioner filed two motions seeking relief from the minute order filed October 13, 2011, by the Magistrate Judge.  (ECF Nos. 292 & 309).  The minute order states that if petitioner wishes to receive a file-stamped copy of any pleading or paper, he shall submit one additional copy and a self-

---

[3] By order filed July 30, 2012, this Court found the third amended petition and the supplemental petition to be "mixed," in that some claims were exhausted and some claims were not exhausted.  (ECF No. 266, at pp. 26-27).  On August 6, 2012, petitioner filed a sworn declaration abandoning his unexhausted claims and expressing his desire to proceed on the exhausted claims of the third amended petition and the supplemental petition.  (ECF No. 267).

addressed postage paid envelope pursuant to Local Rule 10-4. (ECF No. 211). Petitioner has failed to state any convincing reason why the minute order should be vacated. Petitioner's motions for relief from the minute order are denied.

Petitioner has filed a combined motion for sanctions and motion to strike. (ECF No. 307 & 308). Petitioner's motion seeks sanctions against Deputy Attorney General Schulze and Clark County Deputy District Attorney Lisa Rego Luzaich, based on his disagreement with respondents' position that a proffered expert would not have been credible. Petitioner is seeking sanctions for actions not involving this federal habeas corpus proceeding. Petitioner's motion to strike is frivolous and this Court declines to impose sanctions. Petitioner's motions (ECF No. 307 & 308) are denied.

Petitioner has filed a motion for limited continuance or stay. (ECF No. 323). Petitioner's motion for a stay is based on his recent discovery of sentencing irregularities in the state court proceedings many years ago. A close reading of the motion indicates that petitioner admits that the underlying information is not newly-discovered. In the motion, petitioner concedes that the sentencing information on which he bases his motion was discovered in a review of an electronic docketing system, and therefore, was readily available in the record of proceedings. Petitioner concedes that the subject matter information was presented to the sentencing court many years ago, and was available to petitioner in direct appeal proceedings. (ECF No. 323, at p. 2). The asserted new claim set forth in pages 3 and 4 of petitioner's motion is substantially similar, if not identical to, the sentencing claim made in the petition that is before this Court. Petitioner's motion for a stay is denied.

**V. Merits of Third Amended Petition & Supplemental Petition**

    **A. Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)). The formidable standard set forth in section 2254(d) reflects the view that habeas corpus is "'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409). In determining whether a state court decision is contrary to, or an unreasonable application of, federal law this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

In a federal habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the burden set in § 2254(d) on the record that was before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011).

**B. Merits Discussion**

**1. Admission of Propensity Evidence and Related Prosecutorial Misconduct**

**a. Ground 1**

In Ground 1, petitioner claims that cumulative errors of the trial court in admitting certain propensity evidence violated his rights to due process and a fair trial. Specifically, petitioner contends that the trial court erred in allowing testimony from Detective Moniot, allowing testimony from Officer Pettit, and allowing testimony regarding, and admitting into evidence, certain items seized pursuant to a search warrant. Petitioner argues that the evidence was irrelevant and prejudicial. In addressing this claim, the Nevada Supreme Court ruled as follows:

> We conclude that the district court abused its discretion in permitting Detective Moniot to testify, but that the error was harmless. A hearing should have been conducted to establish the admissibility of this evidence. The district court erred in not conducting such a hearing. The relevance of the testimony is questionable because it concerns an act that occurred several months prior to the incidents at issue, and did not result in a criminal charge or arrest. Moreover, the only reason the State put forth the testimony was to establish to the jury that Friedman was a sexual offender. However, based on the overwhelming evidence of Friedman's guilt, the error appears to be harmless. The testimony of several witnesses, in addition to physical evidence gathered, supports that conclusion.
>
> Similarly, the district court abused its discretion in allowing some of the seized items into evidence. Some of the items directly link Friedman to the crime. For example the pornographic magazines seized from his car were relevant because several victims saw Friedman with pornographic magazines when he appeared at the businesses. Additionally, the wig seized is relevant to his created female persona, and maps of the area are relevant to the various locations where Friedman appeared. However, items such as the used condom and dildo only appear to prejudice Friedman without any substantive probative value. While it was error to allow these items

8

into evidence because of their minimal relevance and prejudicial nature, it was harmless error based on the overwhelming evidence of guilt against Friedman. Finally, we conclude that no cumulative error arises from introduction of the testimony and seized items.

(Exhibit 42, at pp. 4-5). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court finds that the admission of the testimony and evidence found during the search did not infect the entire trial such that the resulting conviction violates due process. Moreover, any error was harmless, as the testimony and evidence would not have had a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Federal habeas relief is denied as to Ground 1 of the original petition.

Moreover, to the extent that petitioner claims that agents improperly seized evidence during a search, such challenge is barred in federal habeas. Where a state has provided a defendant with a full and fair opportunity to litigate a Fourth Amendment claim, "a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell,* 428 U.S. 465, 495 (1976); s*ee also Kuhlmann v. Wilson,* 477 U.S. 436, 446-47 (1986). The Supreme Court has determined that excluding Fourth Amendment claims from habeas corpus review created no danger that the courts would deny a safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty because a convicted defendant seeking review of a Fourth Amendment claim on collateral review is "usually asking society to redetermine an issue that has no bearing on the basic justice of his incarceration." *Kuhlmann,* 477 U.S. at 447.

In the instant case, petitioner asserts that evidence taken during a search of his vehicle and home should have been barred from admission at trial. This claim sounds in the Fourth Amendment. It is clear from the record that petitioner was given a full and fair opportunity to litigate his Fourth Amendment claim before the state courts. *See Terrovona v. Kinchloe,* 912 F.2d 1176 (9th Cir. 1990);

*Abell v. Raines*, 640 F.2d 1085 (9th Cir. 1981). The Fourth Amendment claim raised in the federal habeas petition was litigated in the state court below. Because petitioner had the opportunity to fully and fairly litigate the Fourth Amendment claim that he now presents in his federal habeas petition, this Court is precluded from reviewing that claim and it will be dismissed.

### b. Ground 2

In Ground 2, petitioner claims that the State committed prosecutorial misconduct when the prosecutor introduced the aforementioned evidence and testimony, arguing that the evidence and testimony had no relevance to the charged offenses and served only to prejudice him.

In reviewing prosecutorial misconduct claims, the narrow issue that the federal habeas court may consider is whether there was a violation of due process, and not whether there was misconduct under the court's broad exercise of supervisorial power. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The test is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The Court must distinguish ordinary trial error of a prosecutor from that sort of egregious misconduct which amounts to a constitutional violation of due process. *Smith v. Phillips*, 455 U.S. 209, 221 (1982). The question before the court is not whether misconduct denied a fair trial, but whether the state court's conclusion was an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1). *See Frazier v. Huffman*, 343 F.3d 780, 793 (6th Cir. 2003).

Petitioner challenges the prosecutor's introduction of prejudicial propensity evidence, or evidence of other bad acts introduced to show that he acted in conformity with his possession of the sexually-oriented items and his statement to police officers that he was having ongoing urges to offend sexually. Such evidence can be admissible to show intent, lack of mistake, preparation and planning, among other theories. *See* NRS 48.045(2); *see also* FRE 404. Even if the evidence were improper and prejudicial, federal law does not allow relief to be granted on these claims in the habeas forum. Regarding the use of propensity evidence, the United States Supreme Court has never ruled that the introduction of propensity evidence violates the Constitution. The United States Supreme Court expressly left open the question of whether a state law permitting the introduction of propensity evidence would violate due process. *Estelle v. McGuire*, 502 U.S. 62, 75, n.5 (1991). As

to Ground 2, because the introduction of the evidence was not constitutionally suspect, the prosecutor committed no constitutionally recognized misconduct by introducing the evidence and testimony. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). This Court finds that the prosecutor's conduct did not "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The prosecutor's action in introducing such evidence was not egregious misconduct which amounts to a constitutional violation of due process. *Smith v. Phillips*, 455 U.S. 209, 221 (1982). Habeas relief is denied as to Ground 2.

### c. Ground 12(a)(7)

In Ground 12(a)(7), petitioner alleges that trial counsel did not prevent the aforementioned items of evidence and testimony from being admitted.

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an

'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112-113, 129 S.Ct. 1411, 1413 (2009)). In *Cullen v. Pinholster*, the Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S.Ct. at 1398-1401. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ___, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ___, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, — U.S. —, 131 S.Ct. 770, 788 (2011). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

The Nevada Supreme Court addressed petitioner's claims of ineffective assistance of counsel, as follows:

> Friedman further argued that counsel was ineffective for failing to object to prejudicial hearsay and fabricated evidence. He complained that LVMPD Detective Timothy Moniot's testimony was improper because he discussed stalking events unrelated to Friedman's case. However, counsel objected to this testimony as violative of NRS 48.035. Further, we concluded in Friedman's direct appeal that Detective Moniot's testimony was improper, but that the error was harmless in light of the overwhelming evidence of Friedman's guilt.
>
> * * *
>
> Friedman also complained that LVMPD Officer Robert Pettit's testimony that "Pettit claimed to have heard, from another police officer, that he had 'seen' binoculars in Mr. Friedman's vehicle" was inadmissible hearsay. He further contended that the binoculars were irrelevant became they were not connected in any way to the charged crimes. However, Pettit testified at trial that he observed a pair of binoculars in the front seat of Friedman's vehicle. And Friedman failed to explain how he was prejudiced even assuming the binoculars were unconnected to his crimes.
>
> * * *
>
> Friedman asserted that counsel was ineffective for not adequately challenging evidenced seized during police searches of his residence and vehicle. Counsel sought to suppress items seized from the search of Friedman's vehicle, which constituted the bulk of the physical evidence against him. In a pretrial hearing on the motion, counsel did not specifically address items seized from Friedman's residence, including a pair of binoculars, various papers, and pictures of semi-nude women. However, Friedman failed to show how counsel's failure to address these items in the hearing prejudiced him in light of the overwhelming evidence of his guilt. During trial in a hearing outside the jury's presence, counsel objected to the admission of evidence seized during police searches on the grounds that it was irrelevant and unduly prejudicial. Counsel also posed a continuing objection to the admission of al of the evidence seized during police searches. We conclude that Friedman failed to sufficiently explain what additional challenges to the evidence counsel should have taken that would have led to the exclusion of evidence. Friedman also claimed that illegal evidence was obtained through an improper police interrogation. However, he failed to explain why the interrogation was improper. We conclude that Friedman did not establish that his counsel was ineffective in this regard and that the district court did not err in denying this claim.

(Exhibit 64, at pp. 8-9, 14-15). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Counsel was not ineffective under the deferential *Strickland* standard. *See Harrington v. Richter*, 131 S.Ct. 770, 788 (2011). Petitioner has failed to meet his burden of proving

that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court denies habeas relief on Ground 12(a)(7) of the petition.

### 2. Vagueness and Overbreadth of Nevada's Stalking and Open and Gross Lewdness Statutes

In Ground 3, petitioner alleges that Nevada's open and gross lewdness statute, at NRS 201.210, violates due process because it is impermissibly vague. In Ground 11, petitioner alleges that Nevada's open or gross lewdness statute is vague and over-broad as applied to petitioner. In Ground 12(a)(3), petitioner alleges that his trial counsel was ineffective because he failed to challenge the constitutionality of Nevada's stalking statute. In Ground 12(a)(4), petitioner asserts that his trial counsel was ineffective because he failed to challenge the constitutionality of Nevada's open and gross lewdness statute. In Ground 12(b)(3), petitioner alleges that appellate counsel was ineffective because counsel failed to challenge the constitutionality of Nevada's stalking statue and open or gross lewdness statutes.

The doctrines of overbreadth and vagueness are subcategories of what the United States Supreme Court calls "imprecise laws." *City of Chicago v. Morales*, 527 U.S. 41 (1999). First, the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep. *Morales*, 527 U.S. at 52 (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612-615 (1973)). Second, even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests. *Morales*, 527 U.S. at 52 (citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)).

### a. Vagueness Analysis

A statute cannot constitutionally be so vague that men of common intelligence must necessarily guess at its meaning. *Grayned v. City of Rockford*, 408 U.S. 104, 108-114 (1972). This

14

is so because the statute must give adequate warning of what activities it proscribes and must set out explicit standards for those who must apply it.  *Id.* at 108.  "Vagueness may invalidate a criminal law for either of two independent reasons.  First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement."  *City of Chicago v. Morales*, 527 U.S. at 56 (citing *Kolender v. Lawson*, 461 U.S. at 357).  A statute that might otherwise be found to be vague will survive if it includes *a mens rea* or intent element: "The Supreme Court has indicated that the absence of a *mens rea* requirement is an important consideration when determining whether a statue is unconstitutionally vague*.  Colautti v. Franklin*, 439 U.S. 379, 395 (1979); *see also Morales*, 527 U.S. at 55 (describing impermissibly vague criminal law as one that "contains no *mens rea* requirement").

### i.  Open and Gross Lewdness Statute

Petitioner argues that NRS 201.210, Nevada's open and gross lewdness statute, is unconstitutionally vague because it contains no specific elements and provides no guidelines for a citizen or law enforcement to conform their conduct or investigation.  In reviewing petitioner's claim of constitutional vagueness, the Nevada Supreme Court ruled as follows:

> Friedman asserts a reading of the statute only leads one to further questions of what constitutes "open or gross lewdness," and there is no specification of what standards are used to judge conduct.  The State acknowledges that the crime of open and gross lewdness has not been defined by the legislature.
>
> When an offense is either not defined or incompletely defined, the legislature mandates that common law definitions apply.  In Young v. State, this court recognized the common law definition of open and gross lewdness to mean "unlawful indulgence of lust involving gross indecency with respect to sexual conduct committed in a public place and observed by persons lawfully present." [Footnote 19: 109 Nev. 205, 215, 849 P.2d 336, 343 (1993) (quoting 3 Wharton's Criminal Law § 315 (14th ed. 1980)].  This court provided a clear definition of the prohibited conduct.  NRS 201.210 provides the penalty for such an offense.  NRS 193.050(3) provides that the common law, as defined in Young, applies.  Therefore, we conclude that Friedman's argument lacks merit.

(Exhibit 42, at pp. 6-7).  The elements of the lewdness statute require the commission of an act, that is sexual in nature involving gross indecency, in a place open to public view or in an open manner,

involving an unlawful indulgence in lust. *Young v. State*, 109 Nev 205, 215, 849 P.2d 336, 343 (1993). The statute requires that the defendant commit an act that is sexual in nature, in a place open to public view or in an open manner, indulging in lust. Under the United States Supreme Court's standard of *Morales* and *Grayned*, these elements state a specific and narrowly-tailored offense that provides sufficient notice to a reasonable person of the prohibited conduct, and which provides clear standards that permit police to enforce the law in a non-arbitrary, non-discriminatory manner, including an intent element. Masturbation in public, as occured in the instant case, is motivated by lust or sexual urges particularly meets the statutory criteria. *Young v. State*, 109 Nev. 205, 849 P.2d 336 (1993). Petitioner further challenges the statute on the ground that it does not define "masturbation." However, that term is one of common use and meaning. It is not a legal term. *See* Webster's New World Dictionary (1995). The specificity of the statute precludes it from reaching innocent conduct or allowing unfettered enforcement. "Lewd" conduct must be sexual in nature, motivated by lust or sexual urges. As applied to the evidence proffered in this case, petitioner's stroking his penis in full view of an audience made up of young female victims (an audience, notably, that petitioner himself created with his hoax calls as "Paula") while uttering vulgar language, falls squarely within the narrowly defined legal prohibition. *See Young v. State*, 109 Nev. 205, 849 P.2d 336. The definition of lewdness is sufficiently specific. This Court rejects petitioner's assertion that the open and gross lewdness statute is impermissibly or unconstitutionally vague. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling on vagueness was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court denies habeas relief on petitioner's claims that NRS 201.210, Nevada's open and gross lewdness statute, is unconstitutionally vague. The Court similarly denies relief on petitioner's claims that his counsel was ineffective for not raising the issue on appeal or otherwise, as counsel is not ineffective for his decision not to raise a frivolous or meritless claim or defense. *Lockhart v. Fretwell*, 506 U.S. 364 (1993).

///

## ii. Aggravated Stalking Statute

The Nevada Supreme Court addressed petitioner's claim that Nevada's aggravated stalking statute was unconstitutionally vague and that appellate counsel was ineffective for failing to make that argument. The Nevada Supreme Court ruled:

> Friedman next contended that appellate counsel was ineffective for not challenging the aggravated stalking statute as being unconstitutionally vague as applied to him. "The test for vagueness is whether the terms of the statute are 'so vague that people of common intelligence must necessarily guess as to [their] meaning.'"
>
> A stalking charge requires proof of, among other things, a course of conduct. Friedman contended that "course of conduct" is vague as applied to him because the term was not defined or limited to a specific period of time. However, here, the time period alleged was not unfettered, but restricted to a two-month window during which the State alleged that Friedman engaged in a course of conduct designed to cause Gagen to fear death or substantial bodily injury.
>
> Friedman also argued that NRS 200.575 was vague as applied to him because it did not define the threat necessary to support an aggravated stalking offense, i.e. the statute allows the victim's "subjective interpretations of pure speech and mere words" to substantiate an actual threat of death or substantial bodily harm. However, contrary to Friedman's assertion, NRS 200.575 does not employ a subjective test. Rather, the statute requires proof that the victim "be placed in reasonable fear of death or substantial bodily harm." Here, the charge detailed the course of conduct supporting the aggravated stalking charge, and the jury was instructed that to find Friedman guilty of the offense, his actions must have placed the victim in reasonable fear of death or bodily harm.
>
> We conclude that NRS 200.575 was not unconstitutionally vague as applied to him on the grounds he asserts. Consequently we conclude that Friedman failed to demonstrate that appellate counsel was ineffective in this regard and that the district court did not err in denying this claim.

(Exhibit 64, at pp. 30-32). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling on vagueness was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

NRS 200.575(2), aggravated stalking, includes the following elements: "a person who (1) without lawful authority (2) wilfully or maliciously (3) engages in a course of conduct (4) that would

17

cause a reasonable person (5) to feel terrorized, frightened, intimidated or harassed (6) that actually causes the victim to feel terrorized, frightened, intimidated or harassed, and further (7) threatens the victim with the intent to cause him to be placed in reasonable fear of death or substantial bodily harm." "Course of conduct" means a pattern of conduct which consists of a series of acts over time that evidences a continuity of purpose directed at a specific person. Aggravated stalking is a specific intent crime. *Green v. State*, 119 Nev. 542, 80 P.3d 93 (2003).

Courts have repeatedly upheld the validity of stalking statutes against vagueness challenges. The widely-accepted core meaning of stalking is demonstrated by the failure of almost every void-for-vagueness challenge brought against state stalking laws. *See People v. Stuart*, 100 N.Y. 2d 412, 418, 797 N.E. 2d 28 n.4 (2003) (collecting state court decisions upholding stalking statutes, noting that vagueness challenges to stalking statutes have almost uniformly been rejected by reviewing courts). The federal stalking statute at 18 U.S.C. 2261A(2) is very similar to NRS 200.575, and has been upheld on vagueness challenges. *United States v. Shrader*, 675 F.3d 300 (4th Cir. 2012). Like the federal stalking statute, NRS 200.575 does not fail to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, and the statute does not authorize or encourage arbitrary or discriminatory enforcement. A common sense reading of the statute adequately defines the prohibited conduct. *See Shrader*, 675 at 309-11.

Finally, a review of April Gagen's testimony in light of these standards illustrates the sufficiency of the statutory terms. As she left the store she saw Friedman by the alley near the Pony Express store where it was dark, and told him to leave, which he refused to do. April identified Friedman in court as the assailant. As she started walking, Friedman was walking behind the buildings seemingly following her as she walked. He was threatening her saying things like "fuck you, bitch" and telling her that he was going to hurt her. He would periodically appear and then hide behind the buildings along April's path home. "[H]e was following me behind, like, instead of following me like literally following me, he would go behind the buildings, as if he was following but he didn't want me to see him, but I obviously could see him 'cause he kept running . . . he just kept running and going behind all the buildings. Friedman's yelling and threats continued until April met up with Janelle and her mother near Tamarus Street. Janelle and her mother told her that they

18

could hear the guy yelling and that he was yelling at her, calling her a bitch. They told her that he said "Oh, you got your friends here now." April thought Friedman was going to kill her and rape her. (Exhibit 18, Vol. III, Trial Transcript, at pp. 76-77). And, as detective Boucher testified, Friedman admitted to following April, darting behind the buildings along the street and yelling at April. He admitted to Boucher that he had created a "scary persona." (Exhibit 18, Vol. III Trial Transcript, at pp. 102-127). This statement created corroboration for the jury of most of April's testimony. Such testimony illustrates the sufficiency of the statutory terms of NRS 200.575(2), aggravated stalking.

Under the standards of *Morales* and *Grayned*, petitioner cannot establish vagueness of the aggravated stalking statute, as it is far too specific in providing guidelines to both defendants and the police. The Court denies habeas relief on petitioner's claim that NRS 200.575(2), Nevada's aggravated stalking statute, is unconstitutionally vague. The Court similarly denies relief on petitioner's claims that his counsel was ineffective for not raising the issue on appeal or otherwise, as counsel is not ineffective for his decision not to raise a frivolous or meritless claim or defense. *Lockhart v. Fretwell*, 506 U.S. 364 (1993).

**b. Overbreadth Analysis**

The overbreadth doctrine focuses on speech rights under the First Amendment. To succeed in a constitutional challenge based on asserted overbreadth, a claimant must demonstrate that the statute inhibits a substantial amount of protected speech. *New York v. Ferber*, 458 U.S. 747, 768-69 (1982). Overbreadth must not only be real, but substantial as well, judged in relation to a statute's plainly legitimate sweep. *Broadrick v. Oklahoma*, 413 U.S. 601, 612-615 (1973). Overbreadth challenges may be facial or on an as-applied basis – an individual may challenge a statute on its face if that statute substantially infringes on First Amendment freedoms without regard to its application. *Broadrick*, 413 U.S. at 612-15. A statute is overbroad when it reaches both protected and unprotected conduct. A statute that does not have a substantial impact on speech of expressive conduct protected by the First Amendment will not support a facial challenge under the overbreadth doctrine. *City of Chicago v. Morales*, 527 U.S. 41, 52-53 (1999).

///

As-applied overbreadth challenges question a statute's precision within the facts of a particular case. Overbreath claims, if entertained at all, have been curtailed when invoked against ordinary criminal laws that are sought to be applied to protected conduct, so that the offense does not fall into question because it was capable of some unconstitutional applications, but only in that particular case, the Court recognizing the continued use of the criminal statute in question. *See Cantwell v. Connecticut*, 310 U.S. 296 (1940); *Broadrick*, 413 U.S. 614-15. These rules retreat when a criminal statute is challenged:

> [T]he plain import of our cases is, at the very least, that facial overbreadth adjudication is the exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct – even if expressive – falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect – at best a prediction – cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe . . . . To put the matter a different way, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.

*Broadrick*, 413 U.S. at 615.

### i. Open and Gross Lewdness Statute

Petitioner argues that NRS 201.210, Nevada's open and gross lewdness statute, is unconstitutionally overbroad. Petitioner has not explained any protected expressive aspect to the lewd conduct prohibited by NRS 201.210. As applied to his case, petitioner fails to establish that masturbating in public before his assembled audience in a parking lot at night (an audience he had gathered by way of his hoax calls) constitutes protected conduct or speech. Rather, petitioner's actions are traditional criminal conduct, not speech. The open and gross lewdness statute, prohibiting petitioner's conduct, is not overbroad as petitioner has not demonstrated that the statute inhibits a substantial amount of protected speech. *Broadrick v. Oklahoma*, 413 U.S. 601, 612-615 (1973). This Court denies habeas relief on petitioner's claims that NRS 201.210, Nevada's open and gross lewdness statute, is unconstitutionally overbroad. The Court similarly denies relief on

petitioner's claims that his counsel was ineffective for not raising the issue on appeal or otherwise, as counsel is not ineffective for his decision not to raise a frivolous or meritless claim or defense. *Lockhart v. Fretwell*, 506 U.S. 364 (1993).

### ii. Aggravated Stalking Statute

Petitioner claims that Nevada's aggravated stalking statute, NRS 200.575, is unconstitutionally overbroad. NRS 200.575(2) requires a jury finding of actual and objective fear or intimidation and a true threat. True threats are not protected speech and can be prosecuted criminally. *See Watts v. United States*, 394 U.S. 705, 705-707 (1969). Aggravated stalking under NRS 200.575 does not burden protected speech or expressive conduct within its narrow sweep, and therefore is not overbroad. It does not punish speech that is merely unwanted, distasteful, rude or offensive, as Friedman implies. It is a narrowly-tailored statute that outlaws threats made within a course of conduct, tied to a specific *mens rea*, that reasonably and objectively "causes the victim to feel terrorized, frightened, intimidated or harassed, and threatens the victim with the intent to cause him to be placed in reasonable fear of death or substantial bodily harm." NRS 200.575. The target of the stalking statute is fear, objectively defined, and threats made pursuant to a course of conduct. Petitioner has failed to demonstrate how his conduct amounted to protected speech. Specifically, that conduct – waiting by the alley for a female employee to close the store late at night, following her as she walked home alone, darting back and forth from behind businesses and buildings along the street, shouting threats to rape the young woman, and not calling off the course of conduct until she met up with friends further up the street – falls squarely within the narrow confines of the aggravated stalking statute. *See Staley v. Jones*, 239 F.3d 769 (6th Cir. 2000) (upholding Michigan stalking statute on overbreadth and vagueness challenges). This Court denies habeas relief on petitioner's claim that NRS 200.575(2), Nevada's aggravated stalking statute, is unconstitutionally overbroad. The Court similarly denies relief on petitioner's claims that his counsel was ineffective for not raising the issue on appeal or otherwise, as counsel is not ineffective for his decision not to raise a frivolous or meritless claim or defense. *Lockhart v. Fretwell*, 506 U.S. 364 (1993).

///

///

### 3. Insufficiency of the Evidence Claims

In Grounds 4 and 8, petitioner challenges the sufficiency of the evidence for the aggravated stalking conviction. Grounds 12(a)(1) and (2) claim that trial counsel was ineffective for failing to challenge the sufficiency of the evidence for the stalking charge and for the open and gross lewdness charge. Ground 12(b)(2) alleges that appellate counsel did not, but should have, challenged the sufficiency of the evidence on direct appeal.

When a habeas petitioner challenges the sufficiency of evidence to support his conviction, the court reviews the record to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000). The *Jackson* standard does not focus on whether a correct guilt or innocence determination was made, but whether the jury made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Under the *Jackson* standard, the prosecution has no obligation to rule out every hypothesis except guilt. *Wright v. West*, 505 U.S. 277, 296 (1992) (plurality opinion); *Jackson*, 443 U.S. at 326; *Schell*, 218 F.3d at 1023. *Jackson* presents "a high standard" to habeas petitioners claiming insufficiency of the evidence. *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).

Sufficiency claims are limited to a review of the record evidence submitted at trial. *Herrera*, 506 U.S. at 402. Such claims are judged by the elements defined by state law. *Jackson*, 443 U.S. at 324, n.16). The reviewing court must respect the exclusive province of the fact-finder to determine the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from proven facts. *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996). The district court must assume the trier of fact resolved any evidentiary conflicts in favor of the prosecution, even if the determination does not appear on the record, and must defer to that resolution. *Jackson*, 443, U.S. at 326. The United States Supreme Court has recently held that "the only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065, ___U.S. ___ (per curium) (2012).

///

### a. Aggravated Stalking

The crime of aggravated stalking, NRS 200.575(2), requires the following elements: "a person who (1) without lawful authority (2) wilfully or maliciously (3) engages in a course of conduct (4) that would cause a reasonable person (5) to feel terrorized, frightened, intimidated or harassed (6) that actually causes the victim to feel terrorized, frightened, intimidated or harassed, and further (7) threatens the victim with the intent to cause him to be placed in reasonable fear of death or substantial bodily harm." "Course of conduct" means a pattern of conduct which consists of a series of acts over time that evidences a continuity of purpose directed at a specific person.

At trial, sufficient evidence was adduced to prove the elements of the crime, which included April Gagen's testimony. Gagen testified that, as she left the store she saw Friedman by the alley near the Pony Express store where it was dark, and told him to leave, which he refused to do. April identified Friedman in court as the assailant. As she started walking, Friedman was walking behind the buildings seemingly following her as she walked. He was threatening her saying things like "fuck you, bitch" and telling her that he was going to hurt her. He would periodically appear and then hide behind the buildings along April's path home. "[H]e was following me behind, like, instead of following me like literally following me, he would go behind the buildings, as if he was following but he didn't want me to see him, but I obviously could see him 'cause he kept running . . . he just kept running and going behind all the buildings. Friedman's yelling and threats continued until April met up with Janelle and her mother near Tamarus Street. Janelle and her mother told her that they could hear the guy yelling and that he was yelling at her, calling her a bitch. They told her that he said "Oh, you got your friends here now." April thought Friedman was going to kill her and rape her. (Exhibit 18, Vol. III, Trial Transcript, at pp. 76-77). And, as detective Boucher testified, Friedman admitted to following April, darting behind the buildings along the street and yelling at April. He admitted to Boucher that he had created a "scary persona." (Exhibit 18, Vol. III, Trial Transcript, at pp. 102-127). The Court finds that, given the corroborated evidence offered at trial, any rational trier of fact could have found the essential elements of the aggravated stalking beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This Court denies habeas

relief on petitioner's grounds alleging insufficiency of the evidence on the aggravated stalking conviction.

### b. Open and Gross Lewdness

The elements of open and gross lewdness, under NRS 201.210, require the commission of an act, that is sexual in nature involving gross indecency, in a place open to public view or in an open manner, involving an unlawful indulgence in lust. *Young v. State*, 109 Nev 205, 215, 849 P.2d 336, 343 (1993). The statute requires that the defendant commit an act that is sexual in nature, in a place open to public view or in an open manner, indulging in lust. At trial, sufficient evidence was adduced to prove the elements of open and gross lewdness. Several employees testified that they witnessed Friedman in the parking lot outside of a Subway store, a Grumpy's convenience store, and a 7-11 convenience store, engaged in lewd conduct, including publically exposing himself and stroking his penis, in open view of those employees, while calling out sexual vulgarities. The employees who testified at trial regarding Friedman's lewd conduct included Cassie Leffner, (Exhibit 16, Vol. I Trial Transcript, at pp. 105-130), Ruth Garn (Exhibit 16, Vol. I Trial Transcript, at pp.140-183), Caroyn Fadely (Exhibit 17, Vol. II Trial Transcript, at pp. 2-21), Michelle Delvigne (Exhibit 17, Vol. II Trial Transcript, at pp. 21-32), Sharon Spinelli (Exhibit 17, Vol. II Trial Transcript, at pp. 48-55), Yvonne Stuart (Exhibit 17, II Trial Transcript, at pp. 82-89), and April Gagen (Exhibit 18, Vol III Trial Transcript, at pp. 57-100). The employees testified that on numerous occasions, just before Friedman appeared in the parking lot, Friedman contacted their business by phone pretending to be a woman named Paula who represented a local neighborhood watch group, telling the employees to be on the lookout for a sexual predator wearing a certain type of clothing. (*Id.*). Shortly thereafter, Friedman appeared in the parking lot of the businesses wearing the described clothing, publically exposing himself, stroking his penis, and engaging in lewdness. (*Id.*). The employees unequivocally identified Friedman as the individual who committed various acts of indecent exposure and lewdness at their businesses. (*Id.*). Moreover, Friedman's intent for the crime is evident from his efforts to create an audience by making hoax calls. The Court finds that, given the abundance of evidence offered at trial, any rational trier of fact could have found the essential elements of the open and gross lewdness beyond a reasonable doubt. *See Jackson v. Virginia*, 443

U.S. 307, 319 (1979). More than sufficient evidence was presented at trial proving that Friedman

committed multiple acts of open and gross lewdness. This Court denies habeas relief on petitioner's

grounds alleging insufficiency of the evidence on the open and gross lewdness convictions.

In related Ground 12(b)(2), petitioner alleges that appellate counsel did not, but should have,

challenged the sufficiency of the evidence on direct appeal. The Nevada Supreme Court rejected

petitioner's argument on appeal from the denial of his post-conviction habeas petition, as follows:

> Friedman further asserted that appellate counsel should have
> challenged the sufficiency of the evidence to support his convictions.
> With the exception of Brandi Nilson, all of the victims of Friedman's
> crimes unequivocally identified him as the perpetrator of the alleged
> acts of indecent exposure and lewdness, describing these incidents in
> detail. Gagen unequivocally identified Friedman as the person who
> committed lewd acts in her presence and followed her from Subway
> one night and threatened bodily injury. Further, Friedman admitted to
> the police that he made the neighborhood watch calls warning of a
> sexual predator in the area, after which he appeared at Subway dressed
> as the sexual predator. We conclude that a challenge to the sufficiency
> of the evidence had no reasonable probability of success on appeal.
> Therefore, we conclude that the district court did not err in denying
> this claim.

(Exhibit 64, at p. 30). The factual findings of the state court are presumed correct. 28 U.S.C.

§ 2254(e)(1). Counsel was not ineffective for not raising a sufficiency of the evidence claim on

appeal, as counsel is not ineffective for his decision not to raise a frivolous or meritless claim or

defense. *Lockhart v. Fretwell*, 506 U.S. 364 (1993). Petitioner has failed to meet his burden of

proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the United States Supreme Court, or

that the ruling was based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding. The Court denies habeas relief on Ground 12(b)(2) of the

petition.

### 4. "Uncounseled" Prior Conviction

In Grounds 6(b), petitioner alleges that his conviction and sentence violates due process

because one of the prior convictions relied upon by the sentencing court was not proved by the State

to be counseled. In Grounds 7(e) and 7(f), petitioner asserts derivative *Strickland* claims, alleging

that his trial counsel failed to raise this issue at sentencing and appellate counsel failed to raise the issue on appeal.

The State introduced judgments from Ohio and Montana to show four previous felony crimes by petitioner, which included rape, aggravated burglary, non-consensual sexual intercourse, and aggravated assault. All are evidenced in the judgments provided to the trial court. (Exhibit 23A). At the sentencing hearing, petitioner argued that the judgments were stale and that the judgment from Montana was uncounseled. (Exhibit 23, Sentencing Transcript, at p. 6). Petitioner did not challenge the existence of the judgments or the underlying four felony crimes represented therein. Petitioner's attorney repeated the assertion that he was not represented in the 1980-82 Montana sexual assault and battery case, based on Friedman's own statement to him. (Exhibit 23, at p. 8). Petitioner's attorney argued for concurrent sentences. (*Id.*). The trial judge stated that the assertion that Friedman was unrepresented in the Montana case was belied by the record. (*Id.*). Friedman was represented at the plea hearing by two attorneys and at sentencing by one attorney. (Exhibit 23A). As such, petitioner's claim that one of his prior convictions relied upon by the sentencing court was not counseled is factually frivolous.

Moreover, even if one of the convictions relied upon by the sentencing court was uncounseled, petitioner's reliance on *Burgett v. Texas*, 389 U.S. 109 (1967), is misplaced. In *Burgett*, the Supreme Court ruled that uncounseled convictions cannot be used against a person to enhance punishment for another offense. *Id.* The *Burgett* case was abrogated in *Parke v. Raley*, 506 U.S. 20 (1992), where the Court held that *Burgett* was no longer good law due to the intervening decision in *Gideon v. Wainwright*, 372 U.S. 335 (1963), extending the right of counsel at trial to state prosecutions, and that the long-standing, deeply-rooted presumption of regularity that attaches to judgments of conviction did not apply in *Burgett* since the right to counsel did not exist at the time of the earlier conviction, but that when such a constitutional right does exist, the Supreme Court will presume, in the express absence of evidence to the contrary, that the presumption of regularity attaches. *Parke*, 506 U.S. at 27-31. The *Parke* Court concluded that the Constitution does not require the State to prove the validity of the prior convictions, and that requiring defendant to prove their invalidity was proper. *Id.* In the instant case, petitioner offers nothing to prove that his prior

Montana conviction was uncounseled, and the fact that petitioner was represented in the Montana case was clearly established on the face of the court documents provided to the Nevada sentencing court. (Exhibit 23A).

As to petitioner's claim that his trial counsel failed to raise the issue of an "uncounseled" prior conviction at sentencing, the sentencing transcript indicates that trial counsel did in fact raise the issue. (Exhibit 23, at p. 8). As to petitioner's claim that appellate counsel failed to raise the issue on appeal, counsel is not ineffective for his decision not to raise a frivolous or meritless claim or defense. *Lockhart v. Fretwell*, 506 U.S. 364 (1993). Habeas relief is denied as to Grounds 6(b), Grounds 7(e), and 7(f).

### 5. Remaining Ineffective Assistance of Counsel Claims (Grounds 7 and 12)

#### a. Ground 7

Grounds 7(e) and 7(f) have been discussed previously in this order. The Court now turns to the balance of petitioner's exhausted claims of ineffective assistance of counsel.

#### i. Ground 7(a)(1)

Petitioner claims that trial counsel was ineffective for failing to investigate or speak with witnesses Janelle Longino and Linda Parks, who petitioner contends would refute April Gagen's testimony. The defense's private investigator interviewed Longino and her elderly mother Linda Parks, and prepared a summary of each interview. (Exhibits 69 & 74). The Court has reviewed the investigator's summaries and finds that neither Longino nor Parks' observations would have refuted the testimony of April Gagen or any of the other witnesses who testified regarding Friedman's behavior. The interview summary of Longino corroborates the State's evidence regarding Friedman's lewness conduct in the parking lot of the Subway store. (Exhibit 69). Longino's observations further corroborate April Gagen's testimony that Friedman followed her down the street shouting vulgarities at her. (Exhibit 69). As for Linda Parks, the interview summary indicates that she heard and saw Friedman as April Gagen met up with them, and he was still shouting obscenities at Gagen. (Exhibit 74). Both Longino and Parks' testimony would have largely corroborated testimony of the other witnesses and may have strengthened the State's case and damaged the defense. Counsel's decision not to call Longino and Parks as witnesses was tactical and within the

purview of counsel's best judgment. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). Under *Strickland*, petitioner has not shown that counsel's representation fell below an objective standard of reasonableness, nor has he shown prejudice. Habeas relief is denied on this ground of the petition.

### ii. Ground 7(a)(2)

Petitioner claims that trial counsel was ineffective for failing to investigate the scene of the alleged lewdness offenses – the parking lot of the Subway store – to determine whether the witnesses could actually see what they described for the jury. Petitioner implies that the parking lot had poor lighting and it would have been impossible for witness Garn to observe petitioner with his hand in his pants holding a magazine, as was testified to during trial. Witness Ruth Garn did not testify that the parking lot was "dark." To the contrary, her testimony was that the parking lot had "really big floodlight[s], street lights, and marquees. (Exhibit 16, Vol. I Trial Transcript, at p. 149). When asked by the prosecutor whether there was enough light to observe what was going on in the lot, she said: "Oh yes, most definitely." (*Id.*). She further testified that the Subway store was walled with windows "all along" a wall, "all along the front," and "full windows" free of obstructions. (*Id.*). Regarding visibility, petitioner states that it would have been impossible for Garn to observe petitioner from 55 feet away engaged in lewd acts with his hands in his pants. Petitioner further doubts that witness Cassie Leffner could have seen his penis from a distance of between 50 and 165 feet. Petitioner's assertions regarding visibility and that counsel should have brought up these issues at trial are mere conjecture. Petitioner goes on to argue that when witness Garn observed him, he was standing behind a "pony wall" that was a foot and a half high, and this would have blocked a witnesses' view of his lewd acts. However, the relevant area of petitioner's body, his crotch, would have been at least three feet off the ground, even assuming petitioner's stature of 5 foot, 6 inches.

In a related claim, petitioner argues that the 7-11 store employees could not have seen outside the store due to a frosted barrier window. This assertion is belied by the record. Witness Nilsen testified that the entire front of the store was windows, and the only part of the store that someone inside could not see out was the back area. So whether or not a frosted banner hung in one of the

windows, from the vantage point of the clerk working inside, there was an unobstructed view outside. This makes sense, as employees would need the ability to monitor customers who were buying gasoline and any other persons outside. Importantly, the petition cites Exhibit 72, which demonstrates that the defense investigator drove by the store and conducted his investigation almost a year after the crime took place. The scene a year later would bear little relevance to the scene in January 2003. Finally, if witness Nilsen could not see Friedman, petitioner fails to explain how she could explicitly describe his manner of dress that was wholly consistent with all of the other witnesses who testified.

Petitioner alleges that trial counsel failed to investigate the stalking path along Tropicana Avenue to gather evidence to refute April Gagen's trial testimony. Petitioner argues that Gagen first told police that Friedman followed her after she left the Subway shop for a distance of 2 or 3 miles. During her trial testimony, Gagen testified that Friedman followed her from the Subway shop to where she met her friend Janelle at Tropicana and Tamarus Street. (Exhibit 18, Vol. III, Trial Transcript, at p. 81). Friedman points out that the distance from the Subway shop on Eastern and Tropicana to Tamarus and Tropicana is less than 3/4 of a mile. It is not unusual for crime victims experiencing a threat to their safety to misstate details in the initial report of a crime.

Petitioner further argues that there is no alleyway behind the buildings along Tropicana Avenue, so there was no way that he could have followed an alley behind the buildings as he followed April Gagen. Gagen's testimony was that, as he followed her, Friedman hid behind buildings and reappeared out in front to harass and threaten her. What she meant by "behind" the buildings is likely that she meant "behind" in relation to Gagen herself, meaning, to the east of the buildings, on their sides, which would have been "behind" the buildings that she had already passed, as much as it could have meant "behind" as meaning away from the street side. The fact that Friedman popped out to periodically harass Gagen, as both Gagen and Detective Boucher testified to, supports this meaning of "behind."

Moreover, the current MapQuest satellite view of the neighborhood lends support to the conclusion that the buildings along Tropicana Avenue between Eastern Avenue and Spencer Street are surrounded, for the most part, by open parking lots all the way around them, which would have

provided Friedman clear passage to the sides and rear of each building. The existence of open parking lots serves as the functional equivalent of an alleyway that petitioner claims does not exist. This claim fails to show that passage along the sides of these buildings and along the rear of the buildings was not possible, whether there was an alleyway or not. Petitioner's counsel could not be deficient for deciding not to raise a frivolous argument such as what petitioner posits.

### iii. Ground 7(a)(3)

Petitioner claims that trial counsel was ineffective for failing to obtain Friedman's call to police that he was being assaulted and harassed by the Subway store employees. The admissibility of the call is questionable. If admissible and admitted into evidence, the call would have served as an admission by petitioner that he had been near the Subway store harassing the young female employees, and that they had chased him away. It would have likely corroborated the State's case. As such, counsel could not have been deficient for not obtaining and seeking to admit petitioner's call to police. Under *Strickland*, petitioner has not shown that counsel's representation fell below an objective standard of reasonableness, nor has he shown prejudice. Habeas relief is denied on this ground of the petition.

### iv. Ground 7(a)(4)

Petitioner claims that trial counsel was ineffective for failing to obtain the alleged 911/311 calls made by Subway store employees. The record shows that defense counsel subpoenaed these records and decided not to use them. (Exhibit 78). Evidence of the calls came into evidence through the victims. Introducing evidence of the calls would likely have strengthened the State's case. Defense counsel's decision not to introduce evidence of the 911/311 was strategic and cannot be deemed deficient. Petitioner has not shown that counsel's representation fell below an objective standard of reasonableness, nor has he shown prejudice. Habeas relief is denied on this ground of the petition.

### v. Ground 7(b) and 7(c)

In Ground 7(b), petitioner claims that trial counsel failed to impeach certain witnesses, and incorporates by reference Ground 7(a)(1), which this Court has already considered. Moreover, this claim is belied by the record, as trial counsel cross examined the State's witnesses at length about

their testimony and observations. In Ground 7(c), petitioner claims that trial counsel failed to present exculpatory testimony, including the testimony of Janelle Longino and Linda Parks. As to Longino's statement that none of the employees were afraid of Friedman, this was refuted by all of the other Subway victims, including owner Ruth Garn. All testified that they were afraid of Friedman. Trial counsel did not utilize Longino as a witness, in light of inconsistences in her statement and the corroborative impact of Longino's proposed testimony to the testimony of the other victims. Petitioner has not shown that counsel's representation fell below an objective standard of reasonableness, nor has he shown prejudice. Habeas relief is denied on this ground of the petition.

### b. Ground 12

Grounds 12(a)(1), (2), (3), (4), and (7), Ground 12(b)(2), and Ground 12(b)(3) were discussed in this order, *supra*. The court now addresses the remaining sub-claims in ground 12, which are contained in petitioner's *pro se* supplemental petition.

### I. Ground 12(a)(5), (6)

Grounds 12(a)(5) and 12(a)(6) allege that trial counsel was ineffective for failing to call expert witnesses to show petitioner's intent and his medical evidence. Petitioner asserts that counsel should have presented the testimony of Dr. Dudek, a urologist who could have testified that petitioner's penis is under-average size, which would have contradicted the victims' testimony. Dr. Dudek's proposed testimony concerning the size of petitioner's penis would have been largely irrelevant, as the victims did not testify that petitioner had an abnormally large penis. The one witness who testified that way, Brandi Nilsen, revised her testimony to that of a small or average penis. Petitioner's counsel was not ineffective for failing to introduce the testimony of Dr. Dudek. Petitioner has not shown that counsel's actions fell below an objective standard of reasonableness, nor has he shown prejudice. Habeas relief is denied on this ground of the petition.

Petitioner asserts that counsel should have presented the testimony of Dr. Colosimo, a forensic psychologist, based on a written psychological evaluation and Dr. Colosimo's affidavit. (*See* ECF No. 8-2, at pp. 34-40 & ECF No. 8-3, at p. 1). Petitioner argues that Dr. Colosimo's testimony could have cast doubt on legitimacy of April Gagen's fear and on his own motive regarding the stalking charge. Petitioner asserts that: "Dr. Colosimo's expert findings, e.g. that Friedman did not

31

possess the specific intent to convey an unlawful threat or credible threat to induce unlawful fear of death or substantial bodily injuries to Subway employee Gagen was a key piece of exculpatory evidence." (ECF No. 166, at p. 51). Petitioner asserts that Dr. Colosimo would have testified that he had completed prior counseling programming, that he was amenable to counseling, and that he did not pose a danger to the community. (*Id.*, at p. 52).

Petitioner fails to demonstrate that Dr. Colosimo's testimony would have been admissible or convincing at trial. In denying petitioner's state habeas petition alleging trial counsel's failure to present Dr. Colosimo's testimony, the state district court pointed out that Dr. Colosimo had been convicted of defrauding the United States government, and that was sufficient reason not to call him as an expert witness. Specifically, the state district court ruled: "It would be perfectly sound from a legal standpoint to not wish to expose to cross examination a medical expert who had been convicted in 2002 of defrauding the United States government (see, Department of Health and Human Services Departmental Appeals Board, Charles Philip Colosimo v. The Inspector General, Decision No. CR1225, 9/30/04)." (Exhibit 55, at p. 5). Even presuming that this expert would have been permitted to testify, and would have testified in conformity with his affidavit submitted by petitioner, that testimony would have been problematic for the defense for this reason. Additionally, Dr. Colosimo's testimony is contradictory and expresses legal conclusions regarding the crimes for which petitioner was convicted – aggravated stalking and gross and open lewdness. (*See* ECF No. 8-2, at pp. 34-40 & ECF No. 8-3, at p. 1). Dr. Colosimo flatly rejects any possibility that petitioner was engaging in criminal behavior, and purports to speak to petitioner's intent and capacity to commit the charged crimes. Further, it appears that Dr. Colosimo's opinions expressed in his affidavit were based on selective information and incorrect facts that were extremely slanted toward petitioner's version of events – facts that were rejected by the jury at trial. Dr. Colosimo's professional conclusions, based on faulty facts, his impermissible legal conclusions, and lastly, his prior conviction for defrauding the government, would have all been sufficient reason why petitioner's counsel strategically chose not to introduce Colosimo's testimony at trial. Petitioner has not shown that counsel's actions fell below an objective standard of reasonableness, nor has he shown prejudice. Habeas relief is denied on this ground of the petition.

32

### ii.  Ground 12(b)(1)

Petitioner asserts that appellate counsel was ineffective because counsel represented petitioner despite having a conflict of interest, and failed to adequately communicate with petitioner. At the conclusion of sentencing, petitioner's trial counsel, Steve Altig, withdrew as counsel of record, at petitioner's request.  (Exhibit 23, at p. 11).  The state district court judge allowed Altig to withdraw, and appointed petitioner a new public defender to file the direct appeal.  (*Id.*, at pp. 10-11).  Petitioner's allegation of a conflict with the public defender who represented him on direct appeal, Kendrick Basset, amounts to what he describes as his "distrust" of the Clark County Public Defender's Office.  Petitioner alleges that Basset failed to return calls that he and his family made to him.

"In order to substantially comply with the Section 2254 Rule 2(c), a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified.  These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." *Adams v. Armontrout*, 897 F. 2d 332, 334 (8th Cir. 1990).  Bald assertions and conclusory allegations will not suffice.  *Wacht v. Cardwell*, 604 F.2d 1245, 1246, n.2 (9th Cir. 1979).  Petitioner's assertions regarding conflict with appellate counsel are bald allegations devoid of specific facts.  Other than alleging a lack of trust and good communication, petitioner's claim is a bald allegation, and the claim is dismissed on this basis.

### 6.  Grounds 9 and 10

In Ground 9, petitioner claims that his convictions for open and gross lewdness violate his due process rights because there was insufficient evidence to support his convictions and there was evidence of actual innocence.  In Ground 10, petitioner claims that Nevada's criminal stalking statute, NRS 200.575 is vague and overbroad.  In its order of July 30, 2012, this Court found that Grounds 9 and 10 of the federal petition were presented in the state post-conviction petition and were procedurally defaulted by the Nevada Supreme on the independent and adequate basis of NRS 34.810(1)(b) and NRS 34.810(3).  (ECF No. 266, at pp. 23-26).  This Court deferred ruling on cause

and prejudice regarding Grounds 9 and 10 until the merits of the remaining non-defaulted claims were addressed. (*Id.*).

In this order, the Court has ruled on the merits of both Grounds 9 and 10. As to Ground 9, this Court has ruled that there was sufficient evidence at trial to support petitioner's convictions for open and gross lewdness (see discussion of Grounds 4, 8, and 12(b)(2), *supra*). The Court has also rejected the claim asserted in Ground 10 that Nevada's stalking statue is vague and overbroad (see discussion of Grounds 3, 11, 12(a)(3), and 12(a)(4), *supra*). The Court has considered petitioner's arguments of cause and prejudice, as well as fundamental miscarriage of justice, including actual innocence, and finds that none of those theories succeed. Grounds 9 and 10 of the petition are denied.

**VI. Certificate of Appealability**

In order to proceed with his appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). District courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Rule 11(a) of the Rules Governing Section 2254 and 2255 Cases. Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* In this case, no reasonable jurist would find this Court's denial of habeas relief debatable or wrong. The Court therefore denies petitioner a certificate of appealability.

///

///

34

**VII. Conclusion**

      **IT IS THEREFORE ORDERED** that petitioner's motions to expand the record (ECF Nos. 269 & 270) are **DENIED**. Petitioner's motion for discovery (ECF No. 271) is **DENIED.** Petitioner's additional motions to expand the record (ECF Nos. 290, 291, 300, 305, 310, 311 & 318) are **DENIED.** Petitioner's motions for the issuance of subpoenas (ECF Nos. 293, 298, 299) are **DENIED.**

      **IT IS FURTHER ORDERED** that petitioner's motions at ECF Nos. 275, 284, 289, 321, 292, 309, 211, 307, 308, and 323 are **DENIED.**

      **IT IS FURTHER ORDERED** that the third amended petition for a writ of habeas corpus and the supplemental petition are **DENIED IN THEIR ENTIRETY**.

      **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

      **IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

      Dated this 19th day of August, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE